**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NAKISHA MASSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 24-2794 (RBW) |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, <u>et al.</u> | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>ORDER</u>**

On December 16, 2024, Nakisha Massey, the <u>pro se</u> plaintiff in this civil lawsuit, filed her Amended Complaint against the Washington Metropolitan Area Transit Authority ("WMATA"), two WMATA Transit Police Officers, the Metropolitan Police Department's ("MPD") First District Police Substation, and MPD Officer Edward Snead ("Officer Snead")—collectively "the defendants"—seeking $5,125,000 in damages for a variety of alleged civil rights and constitutional violations, <u>see</u> Amendment Complaint for a Civil Case ("Am. Compl.") at 4–6, ECF No. 9, arising out of several officers' alleged conduct in arresting the plaintiff at a WMATA metro station after she "pushed [a woman] on[to] the train tracks[,]" <u>id.</u> at 4.

Specifically, the plaintiff appears to allege that the defendants discriminated against her on the basis of her disability "because they [were] talking to the spirits and they caused [her] disability[—<u>i.e.,</u>] schizophrenia, depression, and anxiety, and they conspired against [her] . . . to kill [her]." <u>Id.</u> at 7. She further alleges that when she was taken to the MPD substation subsequent to her arrest, where she "was shot [three] times in the back of [her] head with a gun" before being released the following morning. <u>Id.</u> at 32. She further alleges that Officer Snead, the officer that she contends shot her, was "talking to a female spirit about [her] arrest" and that

the spirit "told him that [the plaintiff] ha[s] spaceships in [her] head" and that she "do[es] has spaceships in her head . . ." Id. at 7.

The plaintiff further alleges that defendants Glatzer and Snead "are involved in communications with gods and spirits in both the spirit world and on Earth[,]" that "these entities are violent, uncontrollable, and discriminatory[,]" and "that [defendants] Glatzer and Snead maintain friendships and sexual relationships with these beings." Plaintiff's [Amended] Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl.'s Am. Opp'n") at 1, ECF No. 40. The plaintiff appears to allege that this is part of a much broader pattern of "stalking and harassment" by these supernatural entities that "implicates even higher authorities, including the [Barack] Obama administration, [Joseph R.] Biden, and President [Donald J.] Trump." Id. at 2. Finally, the plaintiff argues that these "gods and spirits [have] been stalking and harassing [her] since 2008" and the defendant officers "should be responsible for" these entities' actions due to their alleged relationship. Motion for Contempt of Court at 1, ECF No. 43.

Pending before the Court are (1) defendant WMATA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), see WMATA's Motion to Dismiss Plaintiff's Amended Complaint at 1, ECF No. 11; (2) Officer Snead's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), see Defendant Edward Snead's Motion to Dismiss Plaintiff's Amended Complaint at 1, ECF No. 29; (3) defendants Glatzer and Coutros' Motion to Dismiss Plaintiff's Complaint and Amended Complaint for Insufficient Service of Process and for Failure to State a Claim, ECF No. 36; (4) defendants' Glatzer and Coutros' Amended Motion to Dismiss Plaintiff's Complaint and Amended Complaint for Insufficient Service of Process and for Failure to State a Claim ("Glatzer & Coutros Mot."), ECF No. 39; (5) the plaintiff's Motion for

2

Extension of Time to Amend My Complaint, ECF No. 41; (6) the plaintiff's Motion [for] Contempt of Court, ECF No. 43; and (7) the plaintiff's Amended Motion [for] Contempt of Court, ECF No. 44.

The Court is mindful of the fact that the plaintiff in this matter is proceeding pro se, and that the pleadings of pro se parties are "to be liberally construed, [and] a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). And, because the plaintiff is proceeding pro se, the Court is also mindful that all of her factual allegations, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion. See Richardson, 193 F.3d 545, 548 (D.C. Cir. 1999) ("[H]ere we similarly find that the District Court should have read all of [the pro se plaintiff's] filings together before dismissing this case for lack of subject matter jurisdiction."); Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (concluding the same in the context of a motion to dismiss pursuant to Rule 12(b)(6)).

Despite the liberal deference the Court accords to the plaintiff's submissions, upon consideration of the record in this case, the Court concludes that the plaintiff's allegations that the defendants conspired with spirits to harass and harm her "constitute the sort of patently insubstantial claims" that deprive the Court of subject matter jurisdiction. Tooley v. Napolitano, 586 F.3d 1006, 1010 (D.C. Cir. 2009); see Caldwell v. Kagan, 777 F. Supp. 2d 177, 178 (D.D.C. 2011) ("A district court lacks subject matter jurisdiction when the complaint 'is patently insubstantial, presenting no federal question suitable for decision.'") (quoting Tooley, 586 F.3d at 1009). To warrant dismissal under Federal Rule of Civil Procedure 12(b)(1) for these reasons, the claims must "be flimsier than 'doubtful or questionable'—they must be 'essentially

fictitious.'" Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting Hagans v. Lavine, 415 U.S. 528, 536–37 (1974)).  "Essentially fictitious claims" include those that allege "bizarre conspiracy theories, any fantastic government manipulations of their will or mind, or any sort of supernatural intervention."  Best, 39 F.3d at 330.  Because the plaintiff's claims revolve around the defendants' perceived interactions with spirits, as well as the spirits' purported continued harassment of the plaintiff subsequent to her interactions with the defendants, the Court concludes that it must sua sponte dismiss her Amended Complaint.

Further, to the extent that the Court could construe the plaintiff's Amended Complaint so liberally as to excise any references to the spirits perceived by the plaintiff, the Court would nonetheless have to grant the defendants' motions to dismiss and dismiss the plaintiff's remaining claims.  Specifically, the plaintiff's claims against WMATA based on the actions of its officers in arresting and transporting the plaintiff to MPD custody would be barred by WMATA's sovereign immunity under Section 80 of the WMATA Compact, D.C. Code. § 9-1107.01.  Specifically, "[b]y enacting the WMATA Compact, 'Congress has foreclosed [there being a] judicial remedy against WMATA for all torts, including invasions of civil rights, committed by WMATA in the exercise of police functions[']" related to making arrests of individuals based on probable cause.  Cutchin v. District of Columbia, 174 F. Supp. 3d 427, 430 (D.D.C. 2016) (Walton, J.) (quoting Dant v. District of Columbia, 829 F.2d 69, 74–75 (D.C. Cir. 1987)); see also id. (concluding that claims of excessive force as part of an arrest by WMATA Transit Police Officers were barred by WMATA's sovereign immunity for its operation of its police force).  Thus, despite the plaintiff's contentions that the officers' "improper conduct" in this case—to the extent that their alleged conduct can be divorced from her fanciful claims regarding gods and spirits—is outside the scope of WMATA's sovereign immunity, Pl.'s Am.

4

Opp'n at 2, these claims would have to be dismissed pursuant to WMATA's sovereign immunity for lack of subject matter jurisdiction.

The plaintiff's claims against Officers Glatzer, Coutros, and Snead would also fail to state a claim, even if the Court could overlook the fanciful nature of her allegations. Specifically, the plaintiff alleges that these officers were somehow involved in her being shot in the head several times with a "gun" that "was[ not] a real gun[,]" Joint Meet & Confer Report in Accordance with LCvR 16.3 at 5, ECF No. 10, has no factual basis in the record and appears to be undercut by her own medical records, which show only an "[o]ld fracture of the medial wall of the left orbit[,]" Am. Compl., Exhibit ("Ex.") 1 (Luminis Health Imaging), ECF No. 9. Therefore, even without reference to the supernatural intervention perceived by the plaintiff, the Court is compelled to concluded that the plaintiff would not be able to carry her burden of pleading "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face[,]'" i.e., pleading "factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Accordingly, it is hereby

**ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**.  It is further

**ORDERED** that this case is **CLOSED**.  It is further

**ORDERED** that the Clerk of the Court shall forthwith mail a copy of this Order to the plaintiff's address on record.

**SO ORDERED** this 22nd day of May, 2025.

REGGIE B. WALTON
United States District Judge